UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SHIRLEY WALTON,

       Plaintiff,                              No. 16-12518

v.                                         District Judge Sean F. Cox
                                                 Magistrate Judge R. Steven Whalen

UNUM LIFE INSURANCE COMPANY
OF AMERICA,

       Defendant.
_____/

## REPORT AND RECOMMENDATION

This is an ERISA case. Plaintiff Shirley Walton has filed a complaint alleging that Defendant Unum Life Insurance Company of America ("Unum") wrongfully denied her claim for benefits under a group life insurance policy in which her late husband was the named insured.[1] Before the Court are Defendant's Motion for Judgment Based on the Administrative Record [Doc. #10] and Plaintiff's Cross-Motion for Judgment Based on the Administrative Record [Doc. #12], which have been referred for a Report and Recommendation under 28 U.S.C. § 636(b)(1)(B). For the reasons discussed below, I recommend that Defendant's motion [Doc. #10] be GRANTED and that Plaintiff's motion [Doc. #12] be DENIED.

### I.    FACTS

Plaintiff enrolled in a group life insurance through her employer, Sakthi Automotive Group USA, Inc. The Group Insurance Policy (the "Policy") was issued by

---

[1] Plaintiff filed her complaint in the Wayne County Circuit Court. Defendant removed the case to this Court on July 5, 2016, based on ERISA preemption, 29 U.S.C. §§ 1131, 1132.

Defendant Unum. The plan year at issue ran from July 1, 2015 to July 1, 2016, and Plaintiff elected $25,000.00 coverage for her husband, Michael Walton. (AR 44). The requested effective date of coverage was July 1, 2015. (AR 21).[2]

The Policy contains a provision for a "delayed effective date" in situations where the insured eligible dependant is "totally disabled:"

> "If your eligible dependent is totally disabled, your dependent's coverage will begin on the first of the month coincident with or next following the date your eligible dependent no longer is totally disabled." (AR 67).

The Policy defines "totally disabled" as follows:

> "**TOTALLY DISABLED** means that, as a result of an injury, a sickness or a disorder:
>
> Your dependent spouse:
>
> -is confined in a hospital or similar institution;
> -is unable to perform two or more **activities of daily living** (ADLs) because of a physical or mental incapacity resulting from an injury or a sickness;
> -is **cognitively impaired**;
> -is receiving or is entitled to receive any disability income from any source due to any sickness or injury;
> -is receiving chemotherapy, radiation therapy or dialysis treatment;
> -is confined at home under the care of a physician for a sickness or injury; or
> -has a **life threatening condition**. (AR 92) (Emphasis in original).

The Policy defines "life threatening condition" as "a critical health condition that possibly could result in your dependent's loss of life." (AR 91).

The medical records of Michael Walton show that since 2003, he has been treated for a number of serious medical conditions. In 2003, he was hospitalized multiple time for pericarditis, the inflamation of a membrane surrounding the heart, and underwent a pericardiectomy in 2004. (AR 390). On August 10, 2013, he was hospitalized for acute

---

[2] "AR" refers to page numbers of the Administrative Record (the Claims File), found at Doc. #8, Exhibit B.

heart failure, atrial fibrillation, and rapid ventricular rate. (AR 390, 688). He was readmitted to the hospital three months later, in November 2013, for heart failure and underwent a heart catheterization. (AR 390, 688). In addition to acute systolic heart failure, diagnoses included restrictive cardiomyopathy, renal insufficiency, moderate pulmonary hypertension, and liver dysfunction, which was likely secondary to the heart failure and restrictive cardiomyopathy (AR 688). On admission, Mr. Walton had 50 pounds of abdominal and thigh fluid retention. *Id*.

In February of 2014, a pacemaker was inserted. On December 23, 2014, Mr. Walton was hospitalized with heart failure, and showed worsening of lower extremity edema. *Id*. In February of 2015, he presented in the emergency room with worsening lower extremity edema and shortness of breath. He was admitted to the hospital for a three-day period. In March of 2015, he was readmitted, showing increased swelling and weight gain. (AR 688-89).

On June 10, 2015, Dr. Gomez evaluated Mr. Walton for atrial fibrillation, cardiomyopathy, and hypertensive heart disease. Dr. Gomez noted that Mr. Walton was "doing well," was working full time, and denied any new complaints. (AR 689). Dr. Gomez found "restrictive cardiomyopathy with EF [ejection fraction] of 50%, chronic atrial fibrillation, hypertension with hypertensive heart disease; Peripheral vascular occlusive disease; moderate pulmonary hypertension; mild to moderate CAD [coronary artery disease]; mild LAD [left anterior descending artery] bridging; severely elevated RT arterial pressure; coagulopathy." *Id*.

On July 21, 2015, Mr. Walton was admitted to the hospital due to syncope (fainting) following a three-week history of diarrhea and weight loss of 15 pounds over the previous month. The admission diagnoses included liver failure, coagulopathy, renal

failure, and constrictive cardiomyopathy. *Id*. Because of his history of alcohol consumption, he was not a candidate for a liver transplant. Systolic heart failure continued, and he underwent dialysis three days per week. On August 13, 2015, Mr. Walton was transferred to hospice care. *Id*. Two days later, on August 15, 2015, Mr. Walton died, "due to acute coronary syndrome, (due to) systolic heart failure, (due to) HTN due to cirrhosis of one-year's duration." (AR 353).

Following her husband's death, Plaintiff submitted a claim for life insurance benefits under the Policy. However, on December 15, 2015, Defendant Unum denied the claim, finding that Mr. Walton was "totally disabled" on the start date of the policy, and continued to be "totally disabled" until his death. (AR 366). Plaintiff claimed that at that time, Marnie Webb, RN, made her determination that Mr. Walton had a life-threatening condition as of July 1, 2015, without access to medical records generated before that date. (AR 684).

On March 24, 2016, Plaintiff administratively appealed Unum's denial of benefits. (AR 673-676). On appeal, Unum reviewed Mr. Walton's medical records from 2013 until his death, and requested an independent medical review the records and the claim file. Jacqueline Ballback, MSN, RN, CNE, the independent medical consultant, reviewed Mr. Walton's medical records and clinical evidence going back to 2013, and concluded that he "did have life threatening health conditions that could possibly result in dependent's loss of life as of 7/1/15." (AR 690). On April 4, 2016, Unum denied Plaintiff's appeal, again finding that Mr. Walton was "totally disabled" on July 1, 2015, and remained so until his death. (AR 702-703). In its denial letter (AR 698-704), Unum acknowledged that on July 1, 2015, Mr. Walton was working and not receiving any disability payments, that he was able to perform activities of daily living, that his medical

records do not use the term "life threatening condition," and that the records "do not document extensive liver involvement prior to July 22, 2015." (AR 702). "However, he had documented liver infiltrate as seen in 2014 on ultrasound, with multi-organ involvement and chronic renal failure, for which he was seeing a nephrologist." *Id*.

## II. STANDARD OF REVIEW

The parties agree that Unum's denial of life insurance benefits is reviewed under a *de novo* standard of review. *Moore v. Lafayette Life Ins. Co.*, 458 F.3d 416, 427 (6th Cir. 2006). The Plaintiff bears the burden of proving by a preponderance of evidence that she is entitled to benefits under the Policy. *Javery v. Lucent Technologies, Inc. Long Term Disability Plan for Mgmt. or LBA Employees*, 741 F.3d 686, 700-701 (6th Cir. 2014). In addition, "[w]hen interpreting ERISA plan provisions, general principles of contract law apply...." *Lipker v. AK Steel Corp.*, 698 F.3d 923, 928 (6th Cir. 2012).

## III. DISCUSSION

The salient question is whether on July 1, 2015, Mr. Walton was "totally disabled," as that term is defined in the Policy. More specifically, was he suffering from a "life threatening condition," that is, "a critical health condition that possibly could result in [his] loss of life?"

Mr. Walton's medical records, as summarized above, tell the story. Between August of 2013 and March of 2015, he was hospitalized no fewer than five times, with diagnoses of systolic heart failure and restrictive cardiomyopathy. These were chronic conditions, which led to kidney failure, and he also suffered from cirrhosis of the liver, which was noted to have been of one year duration prior to his death. His cardiologist, Dr. Gomez, noted in June of 2014 that Mr. Walton had "[c]hronic systolic heart failure / Restrictive cardiomyopathy." (AR 477). In May of 2015, Dr. Ashley noted chronic

edema and chronic renal failure (AR 689). It is true that Mr. Walton's final hospitalization did not occur until after July 1, 2015, but he died of serious chronic conditions that predated his admission to the hospital on July 21, 2015, and unquestionably predated the requested effective date of the Policy, July 1, 2015. Chronic heart failure, restrictive cardiomyopathy, kidney and liver failure, chronic edema–these can only be described as "critical health conditions" that "possibly could result in...loss of life." Indeed, they *did* result in Mr. Walton's death on August 15, 2015. As correctly noted in its ultimate denial of benefits on appeal:

> "On admission to the ED on 7/21/15, insured reported symptoms had been 'ongoing for 3 week.' Insured's extensive cardiac history with ablation and pacemaker placement in 2014, along with anticoagulant management of atrial fibrillation, in the context of 2 episodes of decompensation heart failure (deterioration) prior to 7/1/15, reflect instability of insured's cardiac condition and put the insured at risk for both cardiac and renal compromise." (AR 690).

Given Mr. Walton's documented history of chronic and serious cardiac and other medical problems, problems that led to his death shortly after Plaintiff obtained the Policy, Unum correctly determined that he had a life-threatening condition on July 1, 2015, and that he was therefore subject to the delayed effective date set forth in the Policy.

Plaintiff also argues that because a policy valued at $25,000.00 or less did not require proof of insurability, the delayed effective date provision did not apply, and she is entitled to benefits regardless of whether Mr. Walton had a pre-existing life threatening condition on July 1st. That argument is without merit. Again, ERISA plans are reviewed subject to principles of contract law, and "ERISA plans, like all contracts, must be read as a whole." *Candeub v. Blue Cross Blue Shield of Michigan*, 577 F.Supp.2d 918, 933 (W.D. Mich. 2006). The delayed effect date provision regarding life-threatening

conditions is unambiguous, and is separate from and not dependent upon the provision for proof of insurability. The Policy's Enrollment Form contained the following acknowledgment, signed by the Plaintiff:

> "I understand that any coverage I am requesting is subject to all the terms of the policy including any exclusions, and provisions requiring the submission of Evidence of Insurability and approval by Unum, *and* any provision specifying a Delayed Effective Date in the event that I am absent from work or an eligible dependent is totally disabled on the date coverage would otherwise begin." (AR 28). (Emphasis added).

This acknowledgment makes clear that evidence of insurability is a separate from the issue of a delayed effective date of coverage, that is, whether at the time of the purported effective date, a dependent is totally disabled as the result of having a life-threatening condition.

I appreciate that my recommendation to grant summary judgment to Unum is a bitter pill for Plaintiff to swallow. If she is like most people, she probably did not read or understand all of the provisions of the Policy, including the delayed effective date provision, and may have assumed that not having to provide proof of insurability for a $25,000.00 policy guaranteed coverage notwithstanding her husband's medical condition. But looking at the Policy as a whole, as we must, it unambiguously supports Unum's decision to deny benefits because Mr. Walton had a life-threatening condition on July 1, 2015, and that condition persisted until his death in August of 2015.

## IV. CONCLUSION

I recommend that Defendant's Motion for Summary Judgment [Doc. #10] be GRANTED and that Plaintiff's Motion for Summary Judgment [Doc. #12] be DENIED.

Any objections to this Report and Recommendation must be filed within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further

right of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than twenty (20) pages in length unless by motion and order such page limit is extended by the court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

Dated: August 20, 2017        s/R. Steven Whalen
                              R. STEVEN WHALEN
                              UNITED STATES MAGISTRATE JUDGE

---

**CERTIFICATE OF SERVICE**

**I hereby certify on August 20, 2017 that I electronically filed the foregoing paper with the Clerk of the Court sending notification of such filing to all counsel registered electronically. I hereby certify that a copy of this paper was mailed to non-registered ECF participants August 20, 2017.**

                              **s/Carolyn M. Ciesla**
                              **Case Manager for the**
                              **Honorable R. Steven Whalen**